C. H. MABRY v. THOMAS HARP, *as Administrator of the estate of Joel Stewart, deceased.*

1. ANNUAL CROPS—*Personal Property.* Annual crops, like wheat, which are the product of industry and care, sown by the owner of the soil or his tenant, while growing and immature, are personal property.

2. LEASE—*Assignment—Nonassent of Landlord—Effect.* Where a person in good faith purchases of a tenant, having a term of less than two years, an interest in his lease, without the assent of the landlord, such contract is voidable only, not absolutely void. Such contract, with the subsequent assent of the landlord, is valid. If he refuses to assent, the subtenant cannot, as against his objection, take posession of the premises, or any of the growing crop, under the lease.

*Error from Cowley District Court.*

ON or about the 1st day of September, 1887, Joel Stewart, deceased, leased of and from W. H. Osborn 105 acres of land, to be sown in wheat. The land is situate in the counties of Butler and Cowley, in this state. As rental, Stewart was to deliver to Osborn one-half and one-third of wheat, thrashed, and properly in bin. On or about the 28th of February, 1888, Stewart sold his interest in the growing wheat to C. H. Mabry for $185. Mabry, as a part of the consideration, agreed to harvest the grain and take care of the landlord's share, and do the things Stewart had agreed to do by virtue of his lease with the owner of the land. In June, after the wheat had matured, Mabry was notified by Osborn, the landlord, not to enter upon the premises, and immediately thereafter he was enjoined by Osborn from doing so. While the injunction proceedings were pending, Stewart again sold the wheat, to the landlord, the plaintiff in the injunction action. At the time that Stewart sold the growing crop to Mabry, he represented to him that he had a good title thereto, and had the right to sell and transfer the same, and that he could and would deliver possession thereof to Mabry, "and convey all of the rights thereto necessary to enable him to take, receive and enjoy the same for his own use," and he

also "warranted his title and possession thereof, and that he would defend and protect Mabry in securing and enjoying the same to his own use and •benefit." Mabry relied upon the statements and representations of Stewart in purchasing and paying for the crop. After Stewart died, Mabry filed his claim against his estate for damages for not being able to obtain the wheat, or any part thereof, from the premises of Osborn. Thomas Harp is administrator of the estate of Joel Stewart, deceased. The claim was disallowed by the probate court, and Mabry appealed to the district court. In that court, the plaintiff, with leave, filed a petition for breach of contract to recover the money paid by him to Stewart for his growing crop, and also for other damages. To this petition, the defendant filed a general demurrer. The court sustained the demurrer, and the plaintiff elected to stand by his petition. The court then dismissed his action, and rendered judgment against him for costs, to which he excepted, and has brought the case here.

*Beach & Torrance*, for plaintiff in error.

*Dalton & Dalton*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: It is insisted, in support of the judgment, that the contract under which Mabry purchased the growing wheat from Stewart, not having been assented to by the landlord, was void, and conferred no rights upon Mabry, and that the law will leave him just where it finds him; and also, that the money paid to Stewart was a voluntary payment upon a void contract, and cannot be recovered. In 1 Freeman on Executions, § 113, it is said: "Crops, whether growing or standing in the field ready to be harvested, are, when produced by annual cultivation, no part of the realty; they are, therefore, liable to voluntary transfer as chattels. It is equally well settled that they may be assigned and sold under execution." In *Caldwell v. Custard*, 7 Kas. 303, it was said that "growing crops are personal estate." It was said

in *Polley v. Johnson*, 52 Kas. 478, that "annual crops which are the product of industry and care, sown by the owner of the soil, are, while growing and immature, personal property." In *Bellows v. Wells*, 36 Vt. 599, it was held that "a lessee might convey to his lessor all the crops which might be grown on the leased land during the term, and no delivery of the crops after they were harvested was necessary, even as against attaching creditors." See *Hull v. Hull*, 13 Reporter, 362.

If, however, the contract between Mabry and Stewart concerning the growing wheat transferred any interest of Stewart, the tenant, in his lease from Osborn, the landlord, and therefore was in violation of the statute, yet at most the contract was voidable, not void. If it were not for the statute, and the lease did not forbid, a tenant might transfer his interest therein to another person; but under the statute it is neccessary to have the assent of the landlord to the transfer of a lease or any interest. (Gen. Stat. of 1889, ¶ 3620.) If he does not consent, the tenant cannot transfer his lease. If he does consent, the transfer is valid. All depends upon the action of the landlord. (Gen. Stat. of 1889, ¶ 3621; *Waite v. Teeters*, 36 Kas. 604.) Contracts in contravention of the statute are not to be held void, unless the court, from an examination of the statute, shall judge such to have been the intent of the legislature. (*Bemis v. Becker*, 1 Kas. 226.)

As the contract between Mabry and Stewart at most was merely voidable, it cannot be said that Mabry was guilty of any wrongdoing in attempting to purchase the growing crop. Before his purchase, Stewart represented to him that he had a good title to the crop, and the right to sell and transfer the same; that he would deliver possession thereof to Mabry, and he further warranted his title and possession. Mabry relied upon these statements and representations in purchasing and in parting with his $185, which he paid for the growing crop. It is not shown in the record that Mabry was notified before his purchase that Osborn would not assent to the sale of the wheat. Subsequently Mabry was notified that his purchase

would not be recognized, and he was prevented from obtaining any part of the wheat.

It is next insisted that Mabry is estopped from recovering his purchase money back, on account of the injunction proceeding which was commenced and successfully maintained by Osborn against him. This proceeding decided that, as against Osborn, the landlord, Stewart, the tenant, had no right to sell or transfer the growing crop, or any interest in the lease. (*Godfrey v. Black*, 39 Kas. 193.) Stewart was properly notified of the pendency of that proceeding, and neither he nor his representative can now complain of the judgment. Under that judgment, Mabry was prevented from going upon the premises of Osborn and from obtaining the wheat. He, therefore, is entitled to recover back what he paid for the same. Stewart represented to him that he could sell and deliver the growing crop, and Mabry, upon the statements and representations of Stewart, had the right to assume that, in making the sale, Stewart was acting with the assent of Osborn, his landlord. After he paid his money, he found this not to be true. We do not think, however, that Mabry can recover for any expenses, etc., which he incurred after he was notified by Osborn that his purchase of the growing crop or lease would not be recognized.

The judgment of the district court will be reversed, and the cause remanded, with direction that the demurrer be overruled, and further proceedings be had in accordance with the views herein expressed.

All the Justices concurring.